Filed 7/28/25  P. v. Kozloff CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CORY JAMES KOZLOFF,<br><br>     Defendant and Appellant. | A170170<br><br>(Del Norte County<br>Super. Ct. No. CRF-22-9329) |

Cory James Kozloff appeals from the sentence imposed after a prior appeal resulted in a remand for resentencing.  He contends the trial court abused its discretion in sentencing him to the middle term rather than the low term on the principal count and an enhancement.  He additionally contends the trial court erred in failing to obtain and consider a supplemental probation report.  We affirm.

## BACKGROUND

### I.

### *Prior Appeal*

Kozloff's convictions arise from a single incident in which, as stated in our prior opinion, he led police officers on a high-speed chase while in possession of a saleable amount of heroin, a gun and ammunition.  (*People v. Kozloff* (Oct. 30, 2023, A167016) [nonpub. opn.].)  He was charged with and pleaded guilty to six felony counts:  Fleeing a peace officer while driving

recklessly (Veh. Code, § 2800.2) (count 1), felon in possession of a firearm (Pen. Code,[1] § 29800 subd. (a)(1)) (count 2), transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) (count 3), possession for sale of a controlled substance (Health & Saf. Code, § 11351) (count 4), possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)) (count 5) and unlawful possession of ammunition (§ 30305, subd. (a)(1)) (count 6). Kozloff also admitted allegations that he was armed with a firearm (§ 12022, subds. (a)(1), (c))[2] and that he had suffered two or more serious and/or violent felony convictions (§ 1170.12, subd. (c)(2)).

The trial court struck one prior conviction in furtherance of justice (§ 1385) and imposed a total prison sentence of 22 years. The sentence included an upper term of five years on count 3, doubled due to the prior strike (§ 667, subd. (e)(1)); middle terms on counts 1, 2, 5 and 6, also doubled; an upper term of five years on the arming enhancement for count 3 (§ 12022, subd. (c)); and one year on the arming enhancements for counts 1 and 2 (§ 12022, subd. (a)). On count 4, a term of four years was imposed and stayed (§ 654).

Kozloff appealed, arguing that the trial court violated section 654 by imposing multiple punishments for the single act of possessing the same firearm on the same occasion; erred in failing to strike certain enhancements

---

[1] Further statutory references will be to the Penal Code except as otherwise specified.

[2] The information alleged enhancements under section 12022, subdivision (a)(1) (armed with a firearm in commission of a felony or attempted felony), in connection with counts 1 and 2, and enhancements under subdivision (c) (personally armed with a firearm in commission of violation or attempted violation of specified controlled substance offenses), in connection with counts 3 and 4.

pursuant to section 1385, subdivision (c); and erred in imposing the upper term on the section 12022, subdivision (c) enhancement, first because no aggravating circumstance was proven beyond a reasonable doubt (§ 1170.1, subd. (d)), and, second, because the court should have imposed the low term due to Kozloff's childhood trauma (§ 1170, subd. (b)(6).) We remanded for a full resentencing hearing, directing the trial court to stay three of the four punishments imposed for firearm possession (§ 654), to exercise its discretion under section 1385 to decide whether to strike one or both enhancements and to select the appropriate term on the section 12022, subdivision (c) enhancement.

## II.

### *Resentencing*

#### A. The Parties' Arguments and Evidence

At resentencing, Kozloff asked the court to impose a mitigated sentence under section 1170, subdivision (b)(6) based on evidence of lifelong struggles with mental health and drug addiction that he attributed to childhood trauma. This evidence was presented through his own testimony and in letters he submitted that described his difficult life circumstances and traumatic background, including the deaths of his mother, brother and sister in close succession and struggles with addiction and mental illness. He also submitted documentation that, prior to his first sentencing hearing, he was screened by the Del Norte County Department of Health and Human Services Behavioral Health Branch and found eligible for mental health services, as well as documentation of participation and positive performance in prison programming, completion of programs and attainment of milestones.

The People asked the court to impose upper terms on count 3 and the accompanying section 12022, subdivision (c) enhancement. Recognizing that most aggravating circumstances must be proven to the jury beyond a reasonable doubt, the prosecutor argued there were two the court could rely on based on the certified records of Kozloff's prior convictions—that his convictions as an adult are numerous or of increasing seriousness and that he had served a prior prison term. Regarding Kozloff's argument for a mitigated sentence under section 1170, subdivision (b)(6), the prosecutor urged the court not to view childhood trauma as a contributing factor in the offense for several reasons: He was 44 years old at the time of the offenses; he had been to prison multiple times, where, presumably, rehabilitative services were offered; he was a drug dealer; and when asked at the time of the offense why he did not stop, he did not refer to childhood trauma but rather said he fled the police because his life was in danger from a drug dealer having put a hit on him for stealing half a kilogram of heroin. The prosecutor further maintained that even if the court found childhood trauma was a contributing factor, the aggravating circumstances outweighed the mitigating ones and a low term sentence would not be in furtherance of justice. The prosecutor argued that for purposes of the choice between the middle and low terms, the court could rely on any aggravating circumstances, not just those proven to the jury beyond a reasonable doubt or by certified records of conviction. Specifically, the prosecutor argued that the offense involved a large quantity of heroin, Kozloff engaged in violent conduct indicating a serious danger to society in that he drove over 100 miles per hour, went into the wrong lane, ran stop signs and stoplights and ran other cars off the road, and he was a felon in possession of a loaded firearm.

4

Kozloff testified that he was sexually abused by his older cousin and given methamphetamine for several years, starting when he was 13 years old. He was ashamed and afraid to tell anyone, and it caused him to use drugs to "cover . . . up" the abuse. Kozloff testified, "they say I'm bipolar, manic depressive, they still don't know what is wrong with me, I have a chemical imbalance I have been dealing with ever since I am thirteen." He also had learning disabilities and "ADD," and in high school he was in a "special class" and "felt like a retard, people made fun of me." Kozloff's mother, sister and brother died, and he was "left in the streets." Prior to this, he suffered physical punishment at home. Kozloff testified that he tried to kill himself at age 13 and at age 17 and started taking lithium and Prozac when he was in San Jose Regional Hospital.

Kozloff described himself as an addict, "a fricking sexually abused drug addict dude who doesn't even like myself" and "[i]f I don't get help I'm going to end up killing myself or do like in prison." He testified that at the time of his offenses he was using methamphetamine and heroin and was "out of my mind." He testified that the drugs in his possession were for personal use and that although he pleaded guilty to possessing and transporting heroin for purposes of sale, no one had explained the charges to him. He repeatedly denied being a drug dealer. Asked on cross-examination whether he denied telling the police he was a drug dealer, he testified that the officer misconstrued what he said. Kozloff testified, "I said I stole a kilo of cocaine, I did say that," then when the prosecutor reiterated this statement, Kozloff testified, "I didn't steal the drugs, I said they thought that."[3]

---

[3] At the preliminary hearing, a police officer who questioned Kozloff after his arrest testified that when asked why he had not stopped, Kozloff said people had been trying to kill him because a drug dealer he had been

Kozloff testified that he sought help when he got to prison and was participating in rehabilitative programs, including a "dual diagnosis" program for recovery management and relapse prevention, "criminal gangs anonymous" and "critical thinking." His dual diagnosis program showed him that his experiences as a child "went into my adult life" and "ruined my life." He testified, "Childhood trauma has sent me on a course that's ruined my life. [¶] . . . [¶] My childhood trauma is all the contributing factors and the mitigating factors in this case. [¶] . . . [¶] That's all I have ever known was drugs and abuse. [¶] . . . [¶] My childhood trauma has everything to do with me doing drugs, everything to do with my actions." He described the ways the prison programs were helping him and said he planned to continue them. Although there were drugs in prison, he had not been in trouble since being there. He testified, "it took this to get it through to me so I can be getting the help I need" and while "it sucks at forty-six," he had his life left, wanted to spend it with his son and was going to get help on his own.

In argument following Kozloff's testimony, defense counsel challenged the People's view that the court could rely on aggravating factors that had not been proven beyond a reasonable doubt and argued for a mitigated term based on Kozloff's childhood trauma, drug addiction and mental health issues. Counsel argued Kozloff did not pose a danger to public safety, as he was committed to the programming he was receiving and voluntarily taking the steps necessary to ensure changes in his life, and asked the court to strike the section 12022, subdivision (c) enhancement and instead impose the one-year enhancement under section 12022, subdivision (a). The defense asked the court to impose a total sentence of eight years, four months.

---

working for accused him of stealing drugs, and he would be killed if he went to jail.

The prosecutor argued that Kozloff was lying by denying being a drug dealer and urged the court to find he was not credible and reject the argument that childhood trauma had anything to do with Kozloff's offenses. Having submitted certified records of Kozloff's prior convictions for first degree residential burglary, vehicle theft, robbery and child cruelty, and resulting prison sentences, the prosecutor argued the court had more than enough basis for imposing an aggravated term.

Before ruling, the court asked whether the probation officer had any input. The probation officer had previously said he had no new information because the department had not received notice of the appellate decision or the resentencing hearing. He responded that, based on counsels' arguments at the hearing, he assumed he had "as much evidence regarding mitigating factors as anyone else in the room" and opined, "I have a hard time believing that [Kozloff's] claim that prior childhood trauma—" Over defense counsel's objection that the probation officer had said he had no additional information, the court directed the officer to continue speaking; he stated that he had not heard or seen "anything that would indicate to me that prior childhood trauma continues to—if it ever did influence [Kozloff's] actions, and so I would recommend that the Court not find that credible." The probation officer also agreed with the prosecutor that "certified copies of criminal history can be considered as aggravating factors." Defense counsel then argued that Kozloff's denial of being a drug dealer did not indicate dishonesty, as defendants may enter plea agreements despite denying guilt in order to avoid more significant consequences—in this case, a life sentence.

## B. The Court's Ruling

The court stated at the outset that because aggravating circumstances had not been proven beyond reasonable doubt or admitted by Kozloff, the

maximum sentence it could impose would be a middle term. With respect to section 1170, subdivision (b)(6), the court found Kozloff's testimony that childhood trauma contributed to his offense was not credible and it would not be in the interests of justice to impose the low term. The court explained as follows:

"When he was originally sentenced . . . he stated that he was gainfully employed, and he turned into selling drugs . . . because he hurt his back. He's also a forty-four year old man, now forty-six. [¶] Additionally he said he was not a drug dealer, yet he was found with hundreds of doses of heroin upon his person which is contrary to his statements today. Plus . . . he plead[ed] to drug dealing essentially. [¶] Plus he had a loaded firearm, a forty-five, plus he had a Glock ten millimeter ammunition and whole [slew] of another ammunition with him outside the scope one normally considers personal use. [¶] Plus he apparently was so sophisticated as a drug dealer he had half a kilo of heroin that he was accused of stealing. Plus today there's something known as devil in the details. He said in open court also a kilo of cocaine. He said that twice in court today, not heroin but cocaine. [¶] Which tells me he is not credible today. He strikes me as sophisticated and manipulative. That said I also find his issues, whatever happened to him when he was young, are not contributing factors due to his sophistication, his age, what appears to be sophisticated drug dealing operation on his context of his own words."[4]

---

[4] According to the evidence at the preliminary hearing, when the police apprehended Kozloff at the end of the chase, they found on his person a shoulder holster holding a gun with a round in the chamber and a magazine containing ammunition. The police also found, in Kozloff's rear pocket, a plastic bag containing what was later determined to be 27.1 grams of heroin, which amounted to about 2,700 doses, "way more than someone uses for

The court went on to say that "even if it was a contributing factor, that's not in the interest of justice due to the sophistication of the drug dealing process, his lack of candor and the fact that his conduct was so dangerous, a hundred miles an hour wrong-way traffic forcing cars off the road."[5]  The court further stated that it was considering rules 4.421 and 4.423 of the California Rules of Court[6] in deciding between the middle and lower terms, found true a number of aggravating circumstances[7] under rule 4.421

---

personal use."  In the vehicle Kozloff had been driving, officers found another Glock magazine loaded with the same ammunition, a box of the same ammunition, a nine-millimeter Luger round in a cup holder, a .22 rimfire round in a cup holder, and a digital scale in the console.

[5]  Although the court did not expressly refer to mental illness as a separate factor potentially contributing to the offenses, its overall rejection of the defense argument (which included mental illness) implies that it found mental illness was not a contributing factor.  More directly, when the court subsequently declined to find Kozloff's culpability reduced under California Rules of Court, rule 4.423(b)(2), which makes "a mental or physical condition that significantly reduced culpability for the crime" a mitigating circumstance, the court stated that it had already analyzed this point in connection with its ruling on section 1170, subdivision (b)(6).  Specifically, the court stated, "Court made its analysis on B-2 already which I don't find reduces his culpability, that was under [section] 1170[, subdivision (b)](6)."

[6]  Further references to rules will be to the California Rules of Court.

[7]  The court found that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (rule 4.421(a)(1)), as Kozloff drove at 100 miles per hour and "force[d] cars to swerve off the road so they don't cause a head-on collision or die"; the "manner in which the crime was carried out indicates planning, sophistication, or professionalism" (rule 4.421(a)(8)), based on "the large amount of narcotics that the defendant was clearly trafficking" since the amount he was found with "far exceeds personal use"; the crime "involved a large quantity of contraband" (rule 4.421(a)(10)); the conduct "indicates a serious danger to society" (rule 4.421(b)(1)), referring to "not only his driving but quite common heroin is now cut often with Fentanyl

9

and found no factors in mitigation.[8] The court concluded that the "aggravating circumstances actually call for the middle term in the interest of justice."

The trial court imposed an aggregate term of 14 years 8 months. The sentence consisted of the middle term of four years on count 3, doubled due to the prior strike; a consecutive four-year middle term for the section 12022, subdivision (c) firearm enhancement; and consecutive one-third middle terms of eight months, doubled, on counts 1 and 6. The court stayed sentence on counts 2, 4 and 5 and the section 12022, subdivision (a) enhancement pursuant to section 654.

Kozloff again appealed.

---

which can cause death"; Kozloff's prior convictions are of increasing seriousness (rule 4.421(b)(2)); he had served a prior prison term (rule 4.421(b)(3)); he was on parole when he committed the crimes (rule 4.421(b)(4)); and his prior performance on parole and probation was unsatisfactory (rule 4.421(b)(5)).

[8] The court expressly addressed two mitigating factors, explaining why it found they did not apply. It first stated, as we have said, that it had concluded in the context of its section 1170, subdivision (b)(6) analysis that Kozloff's culpability was not significantly reduced due to a mental or physical condition (rule 4.423(b)(2)). Then, as to whether Kozloff voluntarily acknowledged wrongdoing at an early stage (rule 4.423(b)(8)), the court stated that although he entered a plea agreement, he denied being a drug dealer, which the court found "not credible, he clearly was."

# DISCUSSION

## I.

### *The Trial Court Did Not Abuse Its Discretion in Imposing the Middle Term on Count 3.*

#### A. Governing Principles

Pursuant to section 1170, subdivision (b)(1), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Under section 1170, subdivision (b)(2), the court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial," except that the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury" (*id.,* subd. (b)(3)).

Section 1170, subdivision (b)(6) provides, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

**B. The Trial Court Did Not Abuse Its Discretion in Finding Childhood Trauma Was Not a Contributing Factor in Commission of the Offense.**

Kozloff contends the trial court abused its discretion in failing to impose a lower-term sentence pursuant to section 1170, subdivision (b)(6)(A), based on the evidence that he suffered childhood trauma, in particular sexual abuse, that led to his lifelong drug addiction and, he maintains, was a contributing cause of his offenses.[9] He challenges the trial court's finding that his testimony was not credible because he lied in repeatedly refusing to admit he was a drug dealer despite having pleaded guilty to drug trafficking offenses and in twice referring to having possessed cocaine rather than heroin.

As Kozloff recognizes, " '[t]he mere fact a defendant . . . has suffered past trauma is insufficient—[the mitigating circumstance] must be "a contributing factor in the commission of the offense" for the low term presumption to apply.' (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).)" (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1158.) Kozloff contends the trial court misconstrued this requirement by sentencing him as if it was permitted to impose a lower-term sentence only if childhood trauma was the "sole or immediate" cause of the offense. In Kozloff's view, the lower-term presumption applies if a mitigating factor enumerated in section 1170, subdivision (b)(6) has "some connection, however slight, in the commission or circumstances of the crime."

Kozloff cites no authority for this "however slight" formulation. He correctly points out that the court in *People v. Banner* (2022) 77 Cal.App.5th

---

[9] Kozloff refers to evidence of his mental illness at various points in his briefs but largely focuses on childhood trauma in his framing of the basis for application of the lower-term presumption in this case.

226, 241 (*Banner*) concluded that a "contributing factor" under section 1170, subdivision (b)(6) is "less than" a "significant factor" under section 1001.36, which pertains to pretrial mental health diversion. *Banner* so concluded in holding that a trial court's determination that the defendant's mental health was not a "significant factor" in the commission of his crime, as it must be for the court to grant diversion, did not necessarily mean the court found it was not a "contributing factor" within the meaning of section 1170, subdivision (b)(6). (*Banner,* at pp. 241-242.)[10]

*Banner* rejected the defendant's claim that the trial court erred in failing to sua sponte consider mental health diversion (*Banner, supra,* 77 Cal.App.5th at pp. 235-237) but remanded for retroactive application of section 1170, subdivision (b)(6), which had recently come into effect. (*Banner,* at pp. 239-240.) Disagreeing with the People's argument that remand was unnecessary because the trial court did not believe mental illness was a contributing factor in the offense, *Banner* explained that "[b]ecause the respective statutory standards are different, the trial court's conclusion Banner's mental illness was not a *significant* factor in the crime does not subsume a finding it was a lesser *contributing* factor. Hypothetically, a court could find psychological trauma induced by mental illness a contributing factor in a crime notwithstanding the fact the person was lucid at the time of the crime." (*Id.* at pp. 241-242.)

*Banner*'s conclusion that trauma which is not a "significant factor" in the commission of an offense may still be a "contributing factor" under

---

[10] *Banner* made clear that "mental illness alone" does not trigger the statutory lower-term presumption; "[p]sychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)." (*Banner, supra,* 77 Cal.App.5th at p. 241.)

section 1170, subdivision (b)(6) does not equate to the standard Kozloff articulates. Aside from stating that a "contributing" factor is something less than a "significant" one, *Banner* does not define how much of a connection is necessary for one of the factors enumerated in subdivision (b)(6) to contribute to the commission of the offense sufficiently to trigger the statutory lower-term presumption.

We do not understand the trial court here to have believed the presumption applies only if the factor was the "sole" cause of the offense, as Kozloff maintains, but rather that even if childhood trauma continued to affect Kozloff's life in a general way, it did not contribute to these offenses. The evidence that childhood trauma contributed to Kozloff's commission of his offenses came from Kozloff's testimony, and the court found Kozloff was not credible. This finding was not based just on Kozloff's references to possessing cocaine rather than heroin, as Kozloff argues. Although this was one of the concerns the court expressed, the court cited various other considerations: Kozloff's denial that he was a drug dealer despite the quantity of drugs, scale, firearm and ammunition in his possession and his plea to possessing a controlled substance for sale and transporting a controlled substance; the apparent sophistication of his involvement in drug dealing indicated by his claim that he had been accused of stealing a half kilo of heroin; and the inconsistency between his present explanation of his conduct as due to trauma, mental health and addiction and his prior statements that he became involved in drug dealing because his back injury left him unable to continue his gainful employment.

Substantial evidence supports the court's credibility finding. The conclusion that Kozloff was involved in selling drugs is clearly supported by the evidence of the quantity of drugs in his possession along with a scale, a

14

loaded firearm and ammunition. Kozloff does not dispute the court's statement that he had previously said he became involved in selling drugs due to a back injury that interfered with his employment, an explanation inconsistent with his present claims. The court's findings that Kozloff appeared to be "sophisticated" and "manipulative" were based on an evaluation we cannot second guess on a cold transcript. As we have said, the critical question with respect to the lower-term presumption is not whether the defendant suffered trauma but whether any trauma he suffered contributed to commission of the offense. (*People v. Knowles, supra,* 105 Cal.App.5th at p. 765; *People v. Bravo, supra,* 107 Cal.App.5th at p. 1158.) We see no basis in the record for a conclusion that, in finding childhood trauma was not a contributing factor in Kozloff's commission of his offenses, the trial court misunderstood the law it was required to apply or otherwise made a decision so arbitrary as to constitute an abuse of discretion.

### C. The Trial Court Did Not Abuse Its Discretion in Finding Imposition of the Lower Term Would Be Contrary to the Interests of Justice.

In any event, the lower-term presumption does not apply if the trial court finds that aggravating circumstances outweigh mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§ 1170, subd. (b)(6).) The trial court made that finding here; indeed, the court's emphasis of the danger to society presented by both Kozloff's driving and his involvement in selling heroin indicates this was a primary concern. As earlier noted, the court found true a number of aggravating circumstances: the crime involved a high risk of great bodily harm in Kozloff's driving at extremely high speeds and into opposing traffic, forcing other cars off the road (rule 4.421(a)(1)); the evidence of drug trafficking reflected "planning, sophistication, or professionalism"

15

(rule 4.421(a)(8)); Kozloff was in possession of a large quantity of heroin (rule 4.421(a)(10)); his driving and involvement in selling heroin presented a serious danger to society (rule 4.421(b)(1)); his prior convictions were of increasing seriousness (rule 4.421(b)(2)); he had served a prior prison term (rule 4.421(b)(3)); and he was on parole when he committed the crimes (rule 4.421(b)(4)). The court found no mitigating circumstances. Again, we see no basis in the record for concluding the court abused its discretion.

Kozloff contends the court erred in relying on aggravating factors it found true because the People did not allege any aggravating circumstances in the complaint, the probation report did not analyze any aggravating factors, and no aggravating circumstances were found by a jury beyond a reasonable doubt or admitted by Kozloff. He relies on the requirement of section 1170, subdivision (b)(2) that the trial court may impose more than a middle term only if aggravating circumstances are stipulated to by the defendant or found by the trier of fact to have been proven beyond a reasonable doubt.

Section 1170, subdivision (b) provides that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court . . . [¶] may impose a sentence *exceeding the middle term* only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.) Subdivision (b)(6) does not require that the aggravating factors a trial court may rely on to impose the *middle* term be proven beyond a reasonable doubt. (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929.)

16

Nor do *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny require aggravating circumstances to be proven beyond a reasonable doubt before a trial court may decline to impose the lower term under section 1170, subdivision (b)(6). (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 204-205 (*Hilburn*).) The principle established in these cases is that "[o]nly a jury may find ' "facts that increase the prescribed range of penalties to which a criminal defendant is exposed." ' " (*Erlinger v. United States* (2024) 602 U.S. 821, 833 (*Erlinger*), quoting *Apprendi,* at p. 490.) This principle "applies when a judge seeks to increase a defendant's *minimum* punishment" as well as "when a judge seeks to issue a sentence that exceeds the *maximum* penalty authorized by a jury's findings (or a guilty plea)." (*Erlinger,* at p. 833.)[11] Contrary to Kozloff's position, this rule does not mean

[11] In *Erlinger,* the defendant was convicted of an offense that would normally carry a sentence of up to 10 years, but if the defendant had prior convictions for certain offenses committed on separate occasions, the mandatory minimum sentence would become 15 years to life. (*Erlinger, supra,* 602 U.S. at p. 825.) Since a factual finding that the offenses were committed on separate occasions would increase both the maximum and the minimum sentences to which the defendant was exposed, *Erlinger* held that the finding could not be made by a judge under a preponderance of the evidence standard. (*Id.* at p. 835.) Similarly, *Alleyne v. United States* (2013) 570 U.S. 99, 102, which *Erlinger* discussed as an illustration, held that a judge could not determine by a preponderance of the evidence a sentencing enhancement that would require a sentence of seven years to life for an offense that would usually carry a sentence of five years to life. (*Erlinger,* at p. 833.) Recently, in *People v. Wiley* (2025) 17 Cal.5th 1069, the California Supreme Court held a trial court violated the defendant's right to a jury trial when it relied on its own determinations that defendant's felony convictions were of increasing seriousness and that his prior performance on probation was poor in imposing an upper-term sentence, concluding those factors should have been determined by a jury. As discussed in the text of this opinion, the rule in those cases does not apply to a lower- or middle-term sentence.

aggravating factors used to impose the *middle* term under subdivision (b)(6) must be found by a jury beyond a reasonable doubt or established by a guilty plea.

In section 1170, the Legislature established that where it has specified three possible terms of imprisonment for an offense, the permissible range of punishment runs from the low term to the upper term. The Legislature further established that a court may impose the upper term for an offense *only* if aggravating circumstances (other than a prior conviction established by a certified record of conviction) have been either admitted by the defendant or found beyond a reasonable doubt by the trier of fact at trial. (§ 1170, subd. (b)(1), (2), (3).) Accordingly, where aggravating factors have *not* been so established, the statutory maximum sentence becomes the middle term.

By contrast, section 1170, subdivision (b)(6) specifies certain categories of offenders for whom the lower term is to be imposed *if enumerated circumstances* exist. But the facts triggering this provision are not established by the conviction itself; further findings by the court are required. Subdivision (b)(6) only requires imposition of the lower term if the defendant has experienced a specified trauma, was a youth at the time of the offense or was a victim of intimate partner violence or human trafficking; if that circumstance was a contributing factor in commission of the offense; and if the court does not find that aggravating circumstances outweigh mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. Since these facts are not necessary to conviction of the offense, the conviction does not establish the lower term as the maximum sentence to which the defendant is exposed; subdivision (b)(6) does not

18

change the legislatively prescribed *range* of punishment; it directs the court's exercise of discretion within that range.

As *Hilburn* explained, "the language and framework of the amended [section 1170] makes clear the Legislature intended to maintain the sentencing court's discretion to impose the middle term even if it finds the defendant falls within one of the three categories of section 1170, subdivision (b)(6). . . . [¶] [T]he imposition of the low term becomes presumptive only after the sentencing court makes findings in addition to those supporting the jury's verdict. Under the amended statute, the low term is presumed only if the sentencing court first finds the defendant falls into one of the three special categories set forth in subdivision (b)(6) and, second, finds that circumstance was a contributing factor in the commission of the offense. Thus, unlike the middle term, the lower term is presumed only after the court makes additional findings beyond those of the jury. Because those findings occur after the defendant is convicted, and are not necessary for imposition of the presumptive middle term, they do not create a new statutory maximum sentence. Accordingly, . . . the new law does not implicate the concerns of *Apprendi*, which precludes only *increased* punishment based on facts not found by the jury. . . . Stated another way, because the low term becomes presumptive only after additional factfinding by the judge, it does not constitute the 'statutory maximum' for purposes of *Apprendi*." (*Hilburn, supra,* 93 Cal.App.5th at pp. 204-205.)

## II.

### *The Trial Court Did Not Abuse Its Discretion in Imposing the Middle Term on the Enhancement.*

Kozloff's sentence included a consecutive four-year middle term for the section 12022, subdivision (c) firearm enhancement. He contends the trial

court abused its discretion in failing to either strike the enhancement or impose the lower term.[12]

Section 1385 provides that the court "shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id.*, subd. (c)(2).)

Kozloff argues that two of the circumstances included in section 1385, subdivision (c)(2), apply here: "The current offense is connected to mental illness" (*id.*, subd. (c)(2)(D)) and "[t]he current offense is connected to prior victimization or childhood trauma" (*id.*, subd. (c)(2)(E)). Section 1385 specifies that the court "may conclude that a defendant's mental illness [or childhood trauma] was connected to the offense" if, after reviewing any relevant and credible evidence, . . . the court concludes that the defendant's mental illness [or childhood trauma] substantially contributed to the

---

[12] Kozloff asked the trial court to dismiss this enhancement and instead impose a one-year enhancement under section 12022, subdivision (a). He did not ask the court to impose the lower term if it chose to impose the subdivision (c) enhancement, apparently because defense counsel believed this enhancement required a five-year term. Counsel asked the court to impose the mitigated term on count 1 but stated, "[Section] 12022[, subdivision] (c) is a five-year offense, it's not a staggered three, four or five, it's a straight five." The prosecutor had urged the court to impose the upper term on the subdivision (c) enhancement as well as on count 3.

defendant's involvement in the commission of the offense." (*Id.*, subd. (c)(5), (6)(A).)

In Kozloff's view, there was clear evidence that these circumstances existed. He sees the court's imposition of the middle term as necessarily meaning it found that dismissing the enhancement or imposing the lower term would "result in physical injury or other serious danger to others," and argues this finding was entirely without support in the evidence.

The court did not expressly address its reasons for declining to strike the section 12022, subdivision (c) enhancement, but said it was imposing the middle term for the same reasons it had previously indicated, presumably referring to the sentence on count 3. As discussed above, those reasons were that childhood trauma and mental illness were not contributing factors in the offense and aggravating circumstances outweighed mitigating ones such that imposition of the lower term would not further the interests of justice. Again, we cannot find the court abused its discretion.

Contrary to Kozloff's argument, section 1385 did not require the court to weigh evidence of childhood trauma or mental illness heavily in favor of dismissing the enhancement. The statutory directive to give these circumstances great weight in determining whether to dismiss the enhancement applies only if the court finds that childhood trauma or mental illness "substantially contributed" to the offense. (§ 1385, subd. (c)(5), (6).) The qualifier "substantially" necessarily sets a stricter standard for the contribution of a factor under section 1385, subdivision (c) than under section 1170, subdivision (b)(6). Accordingly, the trial court's decision in the context of section 1170, subdivision (b)(6) that childhood trauma and mental illness were not contributing factors in the commission of the offense necessarily implies a conclusion that these factors did not "substantially

21

contribute[]" to the offense within the meaning of section 1385. Similarly, our conclusion that the trial court did not abuse its discretion in finding childhood trauma and mental illness were not contributing factors compels the conclusion that the court did not abuse its discretion in finding they did not substantially contribute to the offense.

Kozloff's assumption that imposition of the middle term necessarily means the trial court found dismissal of the enhancement would endanger the public is unwarranted. Under section 1385, subdivision (c)(5) and (6), an offense is "connected to" childhood trauma or mental illness if that circumstance "substantially contributed" to the offense, and, under subdivision (c)(2) absent a determination that an enumerated circumstance is present, the trial court is not required to find dismissal of the enhancement would endanger the public in order to conclude that dismissal would not be in the interests of justice. (§ 1385, subd. (c)(2) [presence of enumerated circumstance weighs greatly in favor of dismissal *unless* court finds dismissal would endanger public safety].) Since the court impliedly found that childhood trauma and mental illness did *not* substantially contribute to the offense, subdivision (c)(2) did not require the court to weigh these circumstances greatly in favor of dismissal regardless of whether dismissal would endanger the public, and the decision to impose a middle term did not necessarily imply a finding that it would do so.

## III.

### *The Trial Court Was Not Required To Obtain a Supplemental Probation Report.*

Kozloff additionally contends the trial court erred in failing to obtain and consider an updated probation report. He argues that the court would have benefitted from evidence of his postconviction conduct, as it might have informed the court's analysis as to whether a lesser sentence was warranted,

22

and that he was prejudiced by the court sentencing him without an updated probation report.

Although defense counsel did not object to the trial court proceeding without an updated report, Kozloff argues the error was not forfeited because he is challenging the court's " 'apparent misapprehension of statutory sentencing obligations' . . . . (*People v. Panazo* (2021) 59 Cal.App.5th 825, 840.)" He further complains that, over defense objection, the trial court allowed the probation officer to opine on Kozloff's testimony and potential sentence despite the absence of any postconviction investigation. For the reasons we will we explain, we do not agree that the trial court misunderstood its sentencing obligations. Even if Kozloff's claim was not forfeited, however, it lacks merit.

Kozloff was statutorily ineligible for probation due to his strike. (§ 667, subd. (c)(2).) A probation report is discretionary for such a defendant, as is a supplemental report. (*People v. Llamas* (1998) 67 Cal.App.4th 35, 39 (*Llamas*); *People v. Bullock* (1994) 26 Cal.App.4th 985, 989 (*Bullock*); § 1203, subd. (g); rule 4.411(a), (b).)[13] Kozloff's reliance on *Yanaga* is misplaced. He describes *Yanaga* as holding that a "similar" error constituted a prejudicial abuse of discretion. The error *Yanaga* found prejudicial was the trial court's refusal to consider the defendant's postsentencing conduct at resentencing in the mistaken belief that it was only permitted to consider the information

---

[13] *People v. Yanaga* (2020) 58 Cal.App.5th 619 (*Yanaga*) emphasized language in *People v. Brady* (1984) 162 Cal.App.3d 1, 7, indicating that a supplemental probation report is required at resentencing even when the defendant is ineligible for probation. (*Yanaga,* at p. 625.) As *Yanaga* itself recognized, in *Bullock, supra,* 26 Cal.App.4th at page 987, the same court that decided *Brady* later determined it was incorrect and disapproved it on this point. (*Yanaga,* at p. 626, fn. 2.)

23

available at the original sentencing.  (*Yanaga, supra,* 58 Cal.App.5th at p. 622.)  That is not what occurred here.  Evidence of Kozloff's postsentencing conduct and the experiences in his background relevant to sentencing under the ameliorative provisions of section 1170, subdivision (b)(6) and section 1385, subdivision (c)(2) was submitted by the defense.  Kozloff testified at the sentencing hearing about his rehabilitative efforts, the programs he had participated in and his intention to continue seeking help, as well as about the past traumas in his life.  He submitted reports and certificates documenting his rehabilitative efforts and positive conduct in prison; letters from his brother and two long-time friends discussing the trauma he had suffered and his drug addiction and mental illness; and evidence that he had been evaluated and determined to be eligible for mental health services.  Unlike the situation in *Yanaga,* there is no indication here that the court failed to consider this evidence.

Kozloff did not object to the absence of a supplemental report, nor does he now suggest what additional information such a report might have provided or how it might have led the court to impose a lesser sentence.  (See *Llamas, supra,* 67 Cal.App.4th at p. 40; *Bullock, supra,* 26 Cal.App.4th at p. 990.)  Kozloff has not demonstrated that the court abused its discretion in failing to order a supplemental probation report or that he was prejudiced by the absence of such report.  (See *Llamas,* at p. 40; *Bullock,* at p. 990.)  Although defense counsel did object to the court asking for the probation officer's input on sentencing, Kozloff has not suggested or shown he was prejudiced by any error in this regard.  The court was aware that the probation officer had no information beyond what was presented at the hearing and Kozloff suggests no reason to believe the court was unduly

24

swayed by the probation officer's opinion.  Rather, the court made clear that its decision was based on its own evaluation of Kozloff's credibility.

## DISPOSITION

The judgment is affirmed.

STEWART, P.J.

We concur.

MILLER, J.

DESAUTELS, J.

*People v. Kozloff* (A170170)